Elijah JOHNSON

v.

James C. CRUMLISH, District Attorney in and for the City and County of Philadelphia,

and

Armand Della Porta, Assistant District Attorney,

and

Louis J. Amarando, Clerk of Quarter Sessions Court, in and for City and County of Philadelphia,

and

Saul Bookbinder, Warden of Moyamensing Prison,

and

Curtis C. Carson, Jr., Esq.,

and

William Waller,

and

John Doe, a County Detective, District Attorney's Office.

Civ. A. No. 33800.

United States District Court
E. D. Pennsylvania.

Dec. 2, 1963.

Albert B. Soffian, by Albert Dragon, Philadelphia, Pa., for plaintiff.

Edward G. Bauer, City Sol., by Joseph V. Furlong, Deputy City Sol., Philadelphia, Pa., for Crumlish, Della Porta, Amarando, Bookbinder and John Doe.

Frank L. Stanley, Philadelphia, Pa., for Carson and Waller.

WOOD, District Judge.

This is an action for damages arising under the Civil Rights Act, 42 U.S.C.A. § 1983, filed by the plaintiff against the District Attorney of Philadelphia, Assistant District Attorney, Clerk of the Quarter Sessions Court, Warden of Moyamensing Prison, a private attorney, a Philadelphia County detective and an individual named William Waller.

On or about October 5, 1962, the plaintiff was presented a card which stated as follows:

"You are hereby subpoeaned (sic) to appear as witness in Courtroom 243 on Monday, October 8, 1962 at 10 A.M., in case of Com. v. William Waller.

"Curtis C. Carson, Jr.
"Attorney for Defendant"

A copy of this card is attached to the plaintiff's Complaint and he alleges that no subpoena was issued as provided by law, nor was any subpoena exhibited to him at this time or any other time.

The plaintiff is a follower of the Orthodox Jewish Religion and October 8, 1962 was Yom Kippur, the Jewish Day of Atonement, the highest of the Holy Days of the plaintiff's religion. On this day, which was the date designated for the plaintiff to appear in Court, his religion required him to spend from sunrise to sunset in continuous prayer and fasting in the Synagogue. He alleges in his Complaint that he informed the defendant, William Waller, of this fact and that this information was relayed to Curtis Carson, Jr., and the Assistant District Attorney. Despite this fact, the plaintiff states in paragraph 16 of his Complaint that:

"16. Carson and Crumlish, acting through Armand Della Porta on this said day of October 8, 1962, the Day of Atonement, demanded that the Court issue a bench warrant for the immediate arrest of the plaintiff, knowing full well that October 8, 1962 was the Day of Atonement, and that the plaintiff was a member of the Orthodox Jewish faith, and was engaged in prayer in a house of worship, as hereinabove set forth in paragraph 15,[1] all of which was known to the defendant in the criminal case, William Waller, and which information the plaintiff has ascertained had been conveyed to the said Waller, Carson and Della Porta."

On October 10, 1962, the bench warrant was issued and served on the plaintiff at his residence, whereupon he was arrested and taken to City Hall. Later, after six hours without being brought before the judge who had issued the warrant, he was removed to a cell in Moyamensing Prison and incarcerated for eight days when he was permitted to leave on October 17, 1962, without ever being brought before the judge who had issued the warrant. As a result of this series of events, the plaintiff claims that he was deprived of his rights, privileges and immunities, secured to him by the Constitution and laws of the United

1. Paragraph 15 of the Complaint states in part that the plaintiff: " * * * could not in violation of his rights of freedom of religion, as guaranteed by the Constitution of the United States, comply with the so-called 'notice' to appear * * *."

States and the Commonwealth of Pennsylvania.

The defendants have moved to dismiss the Complaint because they contend this Court lacks jurisdiction over the subject matter, and further, that public officers, acting within the scope of their official duties, are immune from civil liability under the Civil Rights Act. The individual defendant, Curtis Carson, Jr., contends that a dismissal is warranted because the Civil Rights Act does not afford a cause of action for the acts of a private person.

At the outset, it is important to a disposition of this motion to establish the substance of the plaintiff's claim. An examination of paragraph 26 of his Complaint reveals the following:

"26. At all times material to plaintiff's cause of action, as herein set forth, the plaintiff was deprived of his rights, privileges, and immunities, secured to him by the Constitution and laws of the United States, and the Commonwealth of Pennsylvania in that first, he was imprisoned for a period of six hours at City Hall and second, he was imprisoned and incarcerated for a period of eight full days in the County Prison of Philadelphia, and was denied his right to be brought before the Court as provided by law, as hereinabove set forth."

He does *not* contend that because he is an adherent to the Jewish religion that he was a victim of any systematic prejudice against Jews. Also, he does *not* contend that his rights to freely exercise his religion were transgressed because he was directed to appear as a witness on Yom Kippur. Simply stated his claim is bottomed on his imprisonment via a bench warrant without ever being brought before the judge who issued the bench warrant. He claims that the

bench warrant required that he be brought before any Court of the Commonwealth then sitting, or if not, then he should have been brought before one of the judges of these Courts. Failure to do this violated his constitutional rights to a hearing on the charge against him.

■ In order to state a valid claim under the Civil Rights Act,[2] Cohen v. Norris, 9 Cir., 300 F.2d 24, 30 (1962), held:

"* * * facts must be alleged which show that the defendant: (1) while acting under color of any statute, ordinance, regulation, custom or usage of any State or Territory; (2) subjects, or causes to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

The purpose of this Act has been lucidly stated by the Supreme Court in Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1960), as follows:

"* * * It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, *neglect*, intolerance or *otherwise*, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies." (Emphasis supplied)

The defendants concede that this Court, in construing this Complaint in a light most favorable to the plaintiff, could find that it "suggests" a deprivation of equal protection of laws, privileges and immunities, and/or a denial of due process

---

2. 42 U.S.C.A. § 1983 which provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress."

of law. They contend, however, that there must be a purposeful and systematic policy of discrimination by public officers before a cause of action arises under the Act.

This argument seems to ignore the Supreme Court's holding in Monroe v. Pape, supra, where the Court specifically held, at p. 180, 81 S.Ct. at p. 480, that the "federal right" exists whenever state laws are not enforced because of "prejudice," "passion," "neglect," "intolerance" or "otherwise" and a citizen's claim to privileges and immunities under the Fourteenth Amendment "might be denied by the state agencies." The Supreme Court has made "neglect" a ground for bringing a federally derived claim as well as "prejudice," "passion" and "intolerance." In addition to these grounds the Court made a blanket denunciation of all forms of conduct which deny Fourteenth Amendment rights by adding the phrase "or otherwise" after the above-proscribed conduct.

The plaintiff's Complaint has alleged that the defendants have acted "under color of law" and that the bench warrant was illegal. He fulfills the second requirement of a cause of action under the Civil Rights Act insofar as he claims that he was summarily imprisoned without a hearing under the allegedly illegal bench warrant. Cohen v. Norris, supra. No allegation of systematic prejudice is required. Monroe v. Pape, supra, 365 U.S. pp. 167–169, 81 S.Ct. pp. 473–474.

██ The public officer defendants further argue that there must be physical brutality, failure to furnish urgently needed medical aid or other extraordinary circumstances amounting to an actual denial of due process before a cause of action will be under the Civil Rights Act. In his Complaint the plaintiff has alleged that he was held incommunicado

for six hours in City Hall and not permitted to call his family or an attorney. Then he was abruptly delivered to the Philadelphia County Prison and incarcerated for eight days before his release without a hearing. While we do not agree with the defendants' argument on this point, we could conceive of no more invidious form of totalitarian cruelty than the summary imprisonment of a citizen without a hearing. Due process of law requires that an accused at least receive a hearing before he is punished for his alleged contempt which was not committed in the presence of the Court. Weiss v. Jacobs, 405 Pa. 390, 175 A.2d 849 (1961).

█ The public officer defendants further contend that they are immune from civil liability under the Civil Rights Act. This contention has been specifically rejected by the Supreme Court in Monroe v. Pape, supra, and particularly in Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1960). wherein the Supreme Court reversed the Seventh Circuit which had held the following individuals to be immune from liability: City Commissioners, Counsel for the City, Police Chief, Police Officers, Sheriff, Deputy Sheriff, Justice of the Peace, States Attorney and Assistant States Attorney.[3]

█ The individual defendants, a private attorney and his client, argue that they are immune from liability under the Civil Rights Act because the acts of private individuals are not within the purview of the Civil Rights Act § 1983. While the main purpose of the Civil Rights Act is to protect the Fourteenth Amendment rights of all citizens from encroachment by arbitrary state action, individuals who allegedly joined or cooperated with state officers who acted under color of state law, are subject to liability under the Civil Rights Act.[4]

3. In Egan v. City of Aurora, 275 F.2d 377, the Seventh Circuit relied upon its prior decision in Monroe v. Pape, 272 F.2d 365, which was also reversed by the Supreme Court, supra, and Tenney et al. v. Brandhove, 341 U.S. 367, 71 S.Ct. 783,

95 L.Ed. 1019 (1951), which is presently relied upon by the public officer defendants in this action.

4. Also see Turner v. City of Memphis, et al., 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.

Picking v. Pennsylvania R. Co., 151 F.2d 240 (3 Cir. 1945); Valle v. Stengel, 176 F.2d 697 (3 Cir. 1949).

 In his Complaint at paragraph 28, the plaintiff states in part that his injury was " * * * caused by all of said defendants, acting individually, jointly or in concert." Therefore, after considering this Complaint, with each and every allegation viewed in a light most favorable to the plaintiff, we hold that the plaintiff has stated a valid claim.

## ORDER

And now, this 2nd day of December, 1963, the defendants' motion to dismiss the plaintiff's complaint is denied.

2d 762 (1962), where the Supreme Court held *per curiam* that a *private corporation* refusing service to a negro

on premises leased from a city was subject to 42 U.S.C.A. § 1983.